UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DOMINICK MAURICE JONES,

        Plaintiff,

v.

UNKNOWN LINSIA et al.,

        Defendants.

Case No. 1:24-cv-336

Honorable Ray Kent

_____/

**OPINION**

This is a civil rights action brought by a pretrial detainee[1] under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.7.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

---

[1] Plaintiff does not explicitly state that he is a pretrial detainee, but he references that he is subject to a $2 million bond. (Compl., ECF No. 1, PageID.7.) Moreover, the Kent County Correctional Facility inmate lookup indicates that Plaintiff was arrested on September 27, 2023, on a charge of assault with intent to murder. *See* https://www.accesskent.com/InmateLookup/newSearch.do (type "Jones" for "Last Name," type "Dominick" for "First Name," complete the reCAPTCHA verification, then click on "2311963" for Plaintiff's booking information) (last visited Apr. 10, 2024).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under

the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[2]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated at the Kent County Correctional Facility (KCCF) in Grand Rapids, Michigan. The events about which he complains occurred at that facility. Plaintiff sues KCCF Correctional Officers Unknown Linsia, Unknown Gunwin, Unknown Lake, Unknown Dominguez, and Unknown Sutton.

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In Plaintiff's complaint, he alleges that on October 23, 2023, Defendant Linsia read a piece of Plaintiff's legal mail before giving it to Plaintiff. (Compl., ECF No. 1, PageID.3.) Defendant Linsia told Plaintiff that his attorney had dropped it off 15 minutes ago. (*Id.*) Plaintiff asked Defendant Linsia why he did not "just call [Plaintiff] out" because Plaintiff was due to go to court tomorrow. (*Id.*) Defendant Linsia said that he was in a rush. (*Id.*) Plaintiff contends that the mail was not in an envelope, and that there was no reason for Defendant Linsia to be reading it "because on the front page it said police report." (*Id.*)

A few hours later, Plaintiff's attorney came to see him to discuss Plaintiff's preliminary hearing. (*Id.*) Plaintiff asked his attorney why he had not placed the mail in an envelope; his attorney responded that he did not know why. (*Id.*) Plaintiff told the attorney that he now had to find out who besides Defendant Linsia had read his legal mail. (*Id.*) Plaintiff told his attorney that he wanted to file a motion to dismiss his criminal charges because of his "First Amendment [rights] being violated and [his] legal mail being shared among staff and inmates." (*Id.*, PageID.4.) Plaintiff's attorney "said ok." (*Id.*)

Plaintiff returned to his cell feeling lightheaded and thinking about how his case "was put on the news and social media." (*Id.*) He asked Defendant Gunwin if he could see medical because he felt like he was about "to fall out." (*Id.*) Plaintiff alleges that his heart was "beating fast and [would] not stop." (*Id.*) Defendant Gunwin told Plaintiff that he "will [call medical] when he get[s] time." (*Id.*) An hour later, Plaintiff saw Defendant Gunwin "making a block check." (*Id.*) Plaintiff heard people whispering, and so he got out of his bed to listen at the door. (*Id.*) Plaintiff heard Defendant Gunwin talking to inmate Hutson. (*Id.*) Plaintiff saw Defendant Gunwin jump back from inmate Hutson's cell door and continue doing his block check. (*Id.*)

4

As soon as Defendant Gunwin left, inmate Hutson approached Plaintiff and told Plaintiff that he knew what charges Plaintiff was jailed for. (*Id.*) Plaintiff responded that he had never told inmate Hutson about his case, and inmate Hutson replied that his "cousin just told [him] what [Plaintiff was] in here for." (*Id.*) Inmate Hutson told Plaintiff that Defendant Gunwin was "his family." (*Id.*) According to Plaintiff, inmate Hutson wanted to fight, but they were on lock down. (*Id.*) Plaintiff avers that the only way inmate Hutson could know the details of Plaintiff's case was from Defendant Gunwin "sharing [Plaintiff's] legal mail with staff . . . and inmates." (*Id.*, PageID.5.)

Later that night, Plaintiff asked Defendant Lake if he had read Plaintiff's legal mail. (*Id.*) Defendant Lake told Plaintiff that "it was up front in the [sergeant's] office." (*Id.*) At that point, Plaintiff did not know what to do. (*Id.*) Plaintiff alleges that his "life is being threatened by inmates" because everyone knows about his charge. (*Id.*)

The next day, Plaintiff went to court, and his request for his charges to be dismissed was denied. (*Id.*) When Plaintiff returned to KCCF, he "had 3 attacks" and his heart "was beating so fast" that the doctor had to come see him. (*Id.*) The doctor told Plaintiff that he "was thinking to[o] much and worrying." (*Id.*)

The next day, Defendant Sutton moved inmate Hutson "for throwing feces on [Plaintiff's door] and writing on [Plaintiff's door] with feces." (*Id.*) According to Plaintiff, that was the second time that inmate Hutson had thrown feces at his door. (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to assert claims premised upon interference with legal mail, a Fourteenth Amendment due process claim premised upon Defendant Gunwin's denial of medical attention, and Fourteenth Amendment due process claims suggesting that Defendants failed to protect Plaintiff by allowing details of

5

Plaintiff's charges to be known to other inmates.³ As relief, Plaintiff seeks $2 million so that he can pay his bond and be released from KCCF. (*Id.*, PageID.7.) He also asks for $9 million for "pain an[d] suffering." (*Id.*) Additionally, Plaintiff asks to have his attorney paid for, as well as a private investigator. (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

---

³ Because Plaintiff is a pretrial detainee, his denial of medical care and failure to protect claims arise under the Fourteenth Amendment's Due Process Clause. *See Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023); *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 727 (6th Cir. 2022).

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claims Against Defendant Dominguez

Although Plaintiff has named KCCF Correctional Officer Unknown Dominguez as a Defendant, he makes no allegations against Dominguez. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL

7

1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendant Dominguez in the body of his complaint. His allegations, therefore, fall far short of the minimal pleading standards set forth in the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8 (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"). The Court, therefore, will dismiss Plaintiff's claims against Defendant Dominguez.

### B. Claims Against Defendant Sutton

Plaintiff's only mention of Defendant Sutton is that the day after Plaintiff went to court, Defendant Sutton moved inmate Hutson for "throwing feces on [Plaintiff's door] and writing on [Plaintiff's door] with feces." (Compl., ECF No. 1, PageID.5.)

A claimed constitutional violation, however, must be based upon active unconstitutional behavior. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Here, Plaintiff sets forth no facts from which the Court could infer that Defendant Sutton engaged in active unconstitutional behavior. Nothing in the complaint suggests that Defendant Sutton was aware that inmate Hutson would throw feces on Plaintiff's door prior to it happening. Instead, Plaintiff's complaint suggests that Defendant Sutton aided Plaintiff by having inmate Hutson moved. Because Plaintiff fails to allege facts suggesting that Defendant Sutton engaged in active unconstitutional behavior, the Court will dismiss Plaintiff's claims against Defendant Sutton.

### C.  Legal Mail Claims

The Court has construed Plaintiff's complaint to raise claims regarding interference with his legal mail based upon his allegations that Defendants Linsia, Gunwin, and Lake read his legal mail, which Plaintiff alleges consisted of the police report regarding his criminal charges.

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

The Sixth Circuit has held that prison regulations governing "legal" mail are subject to a heightened standard than those governing general mail. *See Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003) (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). The ability of a prisoner "to receive materials of a legal nature" implicates a fundamental right. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996); *see Sallier*, 343 F.3d at 873–74 (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). Courts have therefore extended protections to prisoners' legal mail that do not exist for general mail. For example, although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," *Lavado v. Keohane*, 992 F.2d 601, 607

9

(6th Cir. 1993), "the opening of 'legal mail' should generally be in the inmate's presence." *Kensu*, 87 F.3d at 174 (citing *Wolff*, 418 U.S. at 576–77).

"[W]hat constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. The Sixth Circuit Court of Appeals has looked to the definition in the Michigan Administrative Code when considering whether mail sent to or from a prisoner incarcerated with the MDOC is "legal mail." *See, e.g.*, *Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009) (noting that the "Michigan Administrative Code defines 'legal mail' as correspondence with courts, attorneys, public officials, the office of the legislative corrections ombudsman, the department of correction's central office staff, and staff of the institution in which the prisoner is incarcerated. *See* Mich. Admin. Code R. 791.6603(7) (Nov. 15, 2008)"); *Muhammad v. Pitcher*, 35 F.3d 1081, 1083 (6th Cir. 1994) (looking to the Michigan Administrative Code for the definition of "legal mail" in Michigan). Moreover, "the determination of whether mail is considered legal mail depends not only on the nature of the sender, but on the appearance of the mail [as well as] the nature of the contents." *Longmire v. Mich. Dep't of Corr.*, 454 F. Supp. 3d 702, 708 (W.D. Mich. 2020), *aff'd*, No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. June 9, 2021) (noting that "the mail must be 'properly and clearly marked as legal materials,'" and "while the envelope states that it is confidential, it was not, as the district court held, 'clearly marked as legal mail,' nor did it have the Commission's name on it or other salient information, such as 'the name and bar number of a licensed attorney'" (citation omitted)).

Here, Plaintiff contends that the "legal mail" in question consisted of the police report regarding Plaintiff's criminal charges. (Compl., ECF No. 1, PageID.3.) According to Plaintiff's complaint, this document was not in an envelope and had been dropped off at KCCF by Plaintiff's attorney. (*Id.*) Plaintiff asked his attorney why he had not put the mail in an envelope, and his

10

attorney responded that he did not know. (*Id.*) Plaintiff's allegations are insufficient for the Court to infer that the document in question constitutes legal mail. Plaintiff does not allege that the document was clearly marked as legal materials, nor does he suggest that it was marked confidential.

Moreover, Michigan's Freedom of Information Act (FOIA), Mich. Comp. Laws § 15.233 *et seq.*, "given individuals the right to inspect adequately identified public records, unless those records are exempt from disclosure." *Rotta v. City of Manistee*, No. 342776, 2019 WL 1780673, at *2 (Mich. Ct. App. Apr. 23, 2019). Michigan's FOIA does include a law enforcement exception, which provides that investigative records complied for law enforcement purposes may be exempt from disclosure, but "only to the extent that disclosure as a public record would do any of the following":

> *(i)*   Interfere with law enforcement proceedings.
>
> *(ii)*   Deprive a person of the right to a fair trial or impartial administrative adjudication.
>
> *(iii)*   Constitute an unwarranted invasion of personal privacy.
>
> *(iv)*   Disclose the identity of a confidential source, or if the record is compiled by a law enforcement agency in the course of a criminal investigation, disclosure confidential information furnished only by a confidential source.
>
> *(v)*   Disclose law enforcement investigative techniques or procedures.
>
> *(vi)*   Endanger the life or physical safety of law enforcement personnel.
>
> *(vii)*   Disclose the identity of a party who, as described in subdivision (cc), proceeds anonymously in a civil action in which the party alleges that the party was the victim of sexual misconduct. For the purpose of securing the party's anonymity, that party or the party's designee may provide written notification of the civil action and the party's wish to remain anonymous to any law enforcement agency that has investigating records subject to this subparagraph, and the law enforcement agency shall retain a copy of that notification in its files with those investigating records.

Mich. Comp. Laws § 15.243(b)(*i*)–(*vii*). Plaintiff's complaint is devoid of any facts suggesting that disclosure of the police report in question would cause any of the events noted above to occur. Overall, nothing in Plaintiff's complaint permits the Court to infer that the document in question constitutes legal mail that is entitled to heightened constitutional protection. *See Camposeco v. Bordeaux*, No. 1:19-cv-1330 BAM (PC), 2020 WL 5984420, at *8 (E.D. Cal. July 31, 2020) (concluding that documents from the plaintiff's criminal discovery, including police reports, were not legal mail), *report and recommendation adopted by* 2020 WL 5983157 (E.D. Cal. Oct. 8, 2020).

Moreover, even if the Court were to conclude that the document in question constitutes legal mail, Plaintiff cannot maintain his interference with legal mail claims against Defendants Linsia, Gunwin, and Lake. The Sixth Circuit has held that "'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections," *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citing *Lavado*, 992 F.2d at 609), and that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Id.* (citing *Sallier*, 343 F.3d at 879–80; *Lavado*, 992 F.2d at 609). However, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (citations omitted)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents

of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation).

Here, Plaintiff does not allege that his legal mail was opened and read by Defendants Linsia, Gunwin, and Lake on multiple occasions. *Merriweather*, 569 F.3d at 317 (citing *Lavado*, 992 F.2d at 609). Rather, Plaintiff alleges only that they read one piece of what Plaintiff refers to as legal mail. This does not suggest blatant disregard for mail handling by Defendants Linsia, Gunwin, and Lake. *Cf. Anderson v. Andrews*, No. 2:09-cv-109, 2010 WL 3475030, at *8 (W.D. Mich. June 29, 2010) ("[T]he opening of one piece of properly marked legal mail outside the prisoner's presence is not enough to state a claim."), *report & recommendation adopted by* 2010 WL 3474988 (W.D. Mich. Sept. 2, 2010). Plaintiff's claims against Defendants Linsia, Gunwin, and Lake premised upon interference with his alleged legal mail will, therefore, be dismissed.[4]

**D.    Fourteenth Amendment Claims**

**1.    Denial of Medical Attention**

The Court has construed Plaintiff's complaint to assert a Fourteenth Amendment due process claim against Defendant Gunwin premised upon a lack of medical attention. As set forth above, Plaintiff alleges that he asked Defendant Gunwin if he could see a doctor because Plaintiff felt like he was about "to fall out." (Compl., ECF No. 1, PageID.4.) Plaintiff contends that his heart

---

[4] The Sixth Circuit has noted further that "opening properly marked legal mail alone, without doing more, implicates . . . the . . . Sixth Amendment[] because of the potential for a 'chilling effect.'" *Merriweather*, 569 F.3d at 317 (quoting *Sallier*, 343 F.3d at 877). Nevertheless, to the extent Plaintiff intended to raise a Sixth Amendment claim concerning the reading of the police report, he fails to state such a claim for the same reasons discussed *infra*.

was beating fast. (*Id.*) Defendant Gunwin told Plaintiff he would contact medical when he had time. (*Id.*)

To state a claim for inadequate medical care under the Fourteenth Amendment, a pretrial detainee must first allege an objectively serious medical need. *See Trozzi v. Lake Cnty., Ohio*, 29 F.4th 745, 757–58 (6th Cir. 2002). Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in *Kingsley v. Hendrickson*, the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. 576 U.S. 389, 392–93 (2015). *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment context[s]." *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596-97 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). A pretrial detainee must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of

14

harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted).

Here, even assuming that Plaintiff has sufficiently alleged a serious medical need with respect to his rapid heartbeat, he fails to allege facts from which the Court could infer that Defendant Gunwin acted deliberately and recklessly "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* Plaintiff's complaint is devoid of facts from which the Court could infer that Defendant Gunwin knew that Plaintiff would face harm if he did not see a doctor. Additionally, Plaintiff does not allege that he suffered any harm from not seeing a doctor that day; in fact, when Plaintiff did see a doctor the next day after he returned from court, the doctor told Plaintiff that his heartbeat was rapid because Plaintiff was "thinking to[o] much and worrying." (Compl., ECF No. 1, PageID.5.) Simply alleging that Defendant Gunwin failed to secure medical attention for Plaintiff because of Plaintiff's rapid heartbeat, without additional supporting and explanatory facts, fails to satisfy even the Fourteenth Amendment standard. *See Iqbal*, 556 U.S. at 678–79 (discussing that conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983); *Twombly*, 550 U.S. at 555. The Court, therefore, will dismiss any purported Fourteenth Amendment due process claim against Defendant Gunwin premised upon the denial of medical attention.

### 2. Failure to Protect

Because Plaintiff is a pretrial detainee, his failure to protect claims also arise under the Fourteenth Amendment's Due Process Clause. *See Westmoreland v. Butler Cnty.*, 29 F.4th 721, 727 (6th Cir. 2022). "[T]o establish deliberate indifference for failure to protect, 'a defendant . . . must [1] act intentionally in a manner that [2] puts the plaintiff at a substantial risk of harm, [3] without taking reasonable steps to abate that risk, [4] and by failing to do so actually cause the

15

plaintiff's injuries." *Stein v. Gunkel*, 43 F.4th 633, 639 (6th Cir. 2022) (quoting *Westmoreland*, 29 F.4th at 729).

Here, Plaintiff appears to suggest that Defendants Linsia, Gunwin, and Lake failed to protect him from risks of harm by reading his legal mail, which consisted of the police report regarding Plaintiff's criminal charges and sharing that information with staff and other inmates. With respect to Defendants Linsia and Lake, however, Plaintiff fails to allege facts from which the Court could infer that they shared information regarding Plaintiff's underlying charges with other inmates. Plaintiff's complaint suggests only that Defendants Linsia and Lake read the police report, but not that they disseminated that information to others. Plaintiff's sparse allegations regarding Defendants Linsia and Lake fail to allege more than a mere possibly of misconduct and fail to suggest that Defendants Linsia and Lake intentionally acted to place Plaintiff at a substantial risk of harm. *See id.* Moreover, although Plaintiff states that other inmates threatened him and wanted to fight him due to Plaintiff's criminal charges, Plaintiff does not set forth facts suggesting that he told Defendants Linsia and Lake about these threats. Accordingly, Plaintiff's Fourteenth Amendment failure to protect claims against Defendants Linsia and Lake will be dismissed.

With respect to Defendant Gunwin, Plaintiff alleges that he saw Defendant Gunwin talking to inmate Hutson. (Compl., ECF No. 1, PageID.4.) Inmate Hutson then came over to Plaintiff's cell and told Plaintiff that he knew about Plaintiff's criminal case. (*Id.*) Inmate Hutson also told Plaintiff that Defendant Gunwin was his family and started mentioning details from Plaintiff's criminal case. (*Id.*) According to Plaintiff, inmate Hutson wanted to fight, but they were on lock down. (*Id.*) Plaintiff contends that the only way inmate Hutson knew details from Plaintiff's case is from Defendant Gunwin sharing those details from Plaintiff's legal mail. (*Id.*, PageID.4–5.)

While Defendant Gunwin may have acted unprofessionally by sharing details of Plaintiff's case with inmate Hutson, Plaintiff's complaint is devoid of facts from which the Court could infer that Defendant Gunwin did so intentionally to place Plaintiff "at a substantial risk of harm." *Stein*, 43 F.4th at 639. Plaintiff does not set forth any allegations

> that would allow the Court to infer either that [Defendant Gunwin] knew that Plaintiff would need protection at the jail based on the nature of his charges and disregarded the risk to his safety by sharing that information with other inmates, or that [Defendant Gunwin] knew that Plaintiff was at risk once his charges were disclosed and failed to protect him from harm.

*Hamblin v. Loudon Cnty. Jail*, No. 3:17-cv-126-TAV-CCS, 2018 WL 493794, at *3 (E.D. Tenn. Jan. 19, 2018). Moreover, Plaintiff himself suggests that details about his underlying charges had been on the news and on social media, leading to an inference that inmates at KCCF could have learned about the charges via other avenues. Although Plaintiff avers that inmate Hutson wanted to fight and that other inmates have threatened him, he fails to allege that he was actually physically injured as a result of other inmates knowing about his charges. *See Stein*, 43 F.4th at 639. "To infer otherwise, the Court would be forced to speculate wildly, drawing inference upon inference from Plaintiff's sparse allegations." *See Hamblin*, 2018 WL 493794, at *3. Because Plaintiff has not alleged more than a mere possibility of misconduct with respect to Defendant Gunwin's actions, his Fourteenth Amendment failure to protect claim against Defendant Gunwin will be dismissed.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does

17

not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum. This is a dismissal as described by 28 U.S.C. § 1915(g).

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   April 12, 2024                         /s/ Ray Kent
                                                Ray Kent
                                                United States Magistrate Judge